349 So.2d 833 (1977)
Frank M. WRIGHT, Jr., and Jakie D. Wright, Appellants,
v.
J. Miller CADE, Appellee.
No. CC-481.
District Court of Appeal of Florida, First District.
September 16, 1977.
Rehearing Denied October 4, 1977.
*834 Dale K. Bohner of Coble, McKinnon, Reynolds & Rothert, Daytona Beach, for appellants.
Joseph D. Krol of Ossinsky & Krol, Daytona Beach, for appellee.
RAWLS, Judge.
This appeal is from a summary final judgment granting a mandatory injunction directing appellants Wright to file an application with the State of Florida Department of Business Regulation, Division of Beverage, to transfer Alcoholic Beverage License No. 74-507 to appellee Cade.
The legal confusion as to who owns the beverage license today arises out of "statutory" transfers of the license pursuant to Section 561.32(1), Florida Statutes, and "property right" transfers of same arising from its sale, lease or assignment.
In the year 1953, the Grants owned and operated a bar upon real property that they owned. At this point in time, the Grants owned the beverage license that is the subject matter of this suit.
On December 1, 1953, the Grants conveyed the real property upon which the beverage license was utilized in operating a bar known as the Hollywood Bar & Grill to Halifax Finance Company and retained title to the beverage license. Subsequently, the license was transferred by the Grants to one Grace Gelman on September 16, 1955, who in turn statutorily transferred the license to Mrs. Willie Carden on October 26, 1955. On December 9, 1955, Halifax leased the real property to Mrs. Carden (the record holder of the license for 44 days) for a term of five years. A second five-year lease of the real property was entered into between *835 Mrs. Carden and Halifax, and during this term, it appears that Mrs. Carden held the license in her name and operated the bar under lease from Halifax until December 26, 1963.
On May 15, 1962, while Mrs. Carden was operating the bar, the Grants sold the beverage license to Halifax, although Mrs. Carden was reflected as the owner, pursuant to the statute, with the Beverage Department. On December 26, 1963, it appears that Mrs. Carden terminated her second five-year lease with Halifax, because on this date Halifax executed a ten-year lease with Hollywood Bar Incorporation (HBI). This is a critical transaction in determining the rightful owner of the license. The lease agreement between HBI and Halifax not only included the real property but also provided:
"22. The Lessee thoroughly understands and agrees that the Liquor and Beverage Licenses under which the premises are being operated are the sole and exclusive property of the Lessor and that beyond giving the Lessee the right to operate under the same, Lessor does not give, transfer or assign the Lessee any right, title or interest in such licenses. Should it ever become necessary to transfer such licenses to the name of the Lessee, then Lessee agrees to hold such Licenses In Trust for Lessor and at least 30 days before the termination of this Lease will assign back such licenses to Lessor. That Lessor, in case of refusal so to do by Lessee, shall have the right to a mandatory injunction without notice to Lessee from a Court of competent jurisdiction as well as all other legal and equitable remedies ... Lessee, if required, will sign all necessary applications ... During the term of this Lease or any renewal hereof, the Lessor shall not sell or dispose of the aforesaid licenses."
So, on December 26, 1963, the subject beverage license was acknowledged to be owned by Halifax and HBI's sole interest in same was derived from Halifax. The statutory transfer of the license by Mrs. Carden (who apparently claimed no title in the license) on January 9, 1964, to HBI did not vest any title in HBI which had, some 14 days prior thereto by its lease of the property, acknowledged Halifax's ownership of the license.
The next critical transaction occurred on April 30, 1965, when HBI assigned its lease for the real property and beverage license to the Wrights. By this assignment, with Halifax's approval, the Wrights agreed to be bound by the terms of the lease which, as stated above, acknowledged Halifax's ownership of the license. The Wrights' sole basis of any proprietary interest in the license is that of a bill of sale from HBI dated May 15, 1965, which purported to sell the business, goodwill and beverage license. Of course, HBI could not convey any more than it owned, that being only the right to use the license during the term of its lease. And the Wrights, having agreed to abide by the terms of their lease with Halifax, acquired no greater interest in the license than as granted to them by Halifax. So, as of December, 1973, Halifax owned the subject license which it subsequently transferred to appellee Cade.
It cannot be disputed that a property right exists as to a beverage license. House v. Cotton, 52 So.2d 340 (Fla. 1951). On all fours is the case of Rosamond v. Mann, 80 So.2d 317 (Fla. 1955). Rosamond owned a package store and secured a license from the Beverage Department to operate same. He then leased the premises and license (with a covenant to reassign the license) to Proctor, who obtained a transfer of the license from the Beverage Department to his name. Proctor assigned his leasehold interest to Ogilvie, who later executed a new lease with Rosamond. Ogilvie, who had transferred the license to his name, assigned, with Rosamond's approval, the lease to Mann. At the termination of the lease, Mann held over on Rosamond's premises for five months. Prior to vacating Rosamond's premises, Mann procured from the Beverage Department a transfer of the license to a new location. Rosamond demanded the return of the license, but Mann refused on the basis that the terms of the *836 lease relating to the reassignment of the license were no longer binding since the terms of the lease had expired. The Supreme Court held that a covenant to reassign the license was specifically enforceable.
Section 561.32(1), Florida Statutes, does not, as a matter of law, vest title of a beverage license to the purchaser of a business. Rather, the purpose of the statute is to apprise the Beverage Department of the ownership and management of the business in order that same may be regulated pursuant to the beverage laws of Florida. A covenant to reassign a beverage license is valid, may be specifically enforced, and is not contrary to the public policy of this state. Harnish v. Carbonell, 328 So.2d 489 (Fla. 3rd DCA 1976).
The judgment appealed is AFFIRMED.
SMITH, J., concurs.
McCORD, C.J., dissents.
McCORD, Chief Judge, dissents.
This action concerns the disputed claim of ownership of a 4-COP beverage license issued by the Division of Beverage. Both appellants and appellee trace their "chain of title" in the subject license to Mr. and Mrs. H.V. Grant, who held the license prior to 1953. The undisputed evidence on the motions for summary judgment shows that appellants hold the license through a chain in which each transfer was approved by the Division of Beverage and that none of the purported transfers in the chain claimed by appellee were so approved. § 561.32(1), Florida Statutes (1975), which with its predecessor statutes has been in effect in all material respects since 1953, states as follows:
"(1) Licenses issued under the provisions of the Beverage Law shall not be transferable except as follows: When a licensee shall have made a bona fide sale of the business which he is so licensed to conduct he may obtain a transfer of such license to the purchaser of said business, provided the application of the purchaser shall be approved by the division in accord with the same procedure provided for in ss. 561.17, 561.18 and 561.19, in the case of issuance of new licenses. However, no one shall be entitled as a matter of right to a transfer of a license when revocation or suspension proceedings have been instituted against a licensee, and transfer of license in any such case shall be within the discretion of the division. Before the issuance of any transfer of license herein provided, the transferee shall pay a transfer fee of 10 percent of the annual license tax to the division."
On September 16, 1955, the Grants transferred to one Gelman; on October 26, 1955, Gelman transferred to one Carden; on January 9, 1964, Carden transferred to Hollywood Bar, Incorporated; and on May 28, 1965, Hollywood Bar, Incorporated, transferred to appellants.
The chain under which appellee claims an interest in the license (none of the transfers of which had been approved by the Division of Beverage) is as follows: On May 15, 1962, the Grants sold the license to Halifax Finance Company (after having previously transferred the license as aforesaid on September 16, 1955, to Gelman), and on September 11, 1975, Halifax sold the license to appellee. During the course of the above transactions, there were also leases of the license and of the realty on which the business was located. In 1953, prior to the Grants' sale of the license to Gelman in 1955, they sold the real property to Halifax. In the 1955 transfer of the license to Gelman, H.V. Grant filed the following sworn statement with the State Beverage Department:
"I hereby consent to the above transfer and represent to the State Beverage Department that the above license is in my name and a sale in good faith has been made to the within applicant of the business for which the foregoing transfer of license is sought, and that I have furnished to the within named purchaser a list of all creditors as required by Sections 726.02 and 726.03, Florida Statutes, 1951, as amended."
Halifax in December, 1955, and December, 1960, respectively, leased the real property *837 and the use of the license to Carden for two successive five-year terms (which license Carden already owned as aforesaid). Then in 1963 Halifax leased the real property and the use of the license for a 10-year term to Hollywood Bar, Incorporated. Subsequently on January 9, 1964, Hollywood Bar purchased the license with the approval of the Division from Carden, the true owner, as aforesaid. Subsequent to the 1963 10-year lease from Halifax to Hollywood Bar, a foreclosure suit was brought against Halifax and the real property was sold on foreclosure sale to one Ragan, and Ragan then sold the real property to appellee. Also later in that same year, Halifax, which as aforesaid did not own either the real property or the license at that time, executed an assignment of lease and the license to appellee. Then in 1975 Halifax sold the license, which it did not own, to appellee.
It is apparent that appellants have a much stronger claim of ownership to the license than does appellee. Since all of the transfers in appellants' chain were approved by the Division of Beverage and the sale of the license from the Grants to Halifax occurred after the Grants had already transferred the license to Gelman (appellant's predecessor in the chain of title to the license), the subsequent assignments of lease and license and sale of the license to appellee were of no effect.
The majority opinion rests upon an acknowledgment by lessee Hollywood Bar in a December 26, 1963, purported lease of the license and the real property from Halifax. As above pointed out, Halifax, the lessor, did not own the license, it having previously been transferred by Grant to Gelman. As above stated, Gelman transferred to Carden and Carden to Hollywood Bar (after the purported lease from Halifax to Hollywood Bar). Hollywood Bar then transferred to the Wrights (appellants). Thus the Wrights are the true owners of the license. I would, therefore, reverse.